**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| RICHARDSON FLEURISSAINT,<br><br>Petitioner,<br><br>v.<br><br>LEONARD ODDO et al.,<br><br>Respondents. | ) | 3:26-cv-01027 |

**MEMORANDUM ORDER GRANTING MOTION TO ENFORCE**

Pending before the Court is Petitioner's Motion to Enforce. (ECF No. 12). Petitioner, a citizen of Haiti, is currently detained at Moshannon Valley Processing Center. Petitioner first petitioned the Court for a Writ of Habeas Corpus on June 2, 2026. (ECF No. 1). On June 26, 2026, the Court granted in part and denied in part the Petition for Writ of Habeas Corpus. (ECF No. 9). The Court ordered that Petitioner receive an individualized bond hearing before a neutral immigration judge pursuant to 8 U.S.C. § 1226. (ECF No. 9). Following notice from Respondents that said bond hearing was held the Court issued an order closing this case without prejudice but "retaining jurisdiction of the action and of the parties for further proceedings as may be appropriate." (ECF No. 11). Petitioner's Motion to Enforce followed. (ECF No. 12).

The Court ordered Respondents to respond to Petitioner's Motion to Enforce (ECF No. 15) and such response was filed on August 11, 2026 (ECF No. 16). Following this Response, the Court ordered both Petitioner and Respondents to file a statement of position on the following:

> (1) Under what statutory authorization was Petitioner paroled; (2) Whether that parole was revoked or terminated prior to its expiration, and if so, when and whether notice to Petitioner of such was provided and the basis for that revocation/termination; and (3) In light of the answers to preceding questions, whether the Court has jurisdiction to review Petitioner's due process claims arising from his January 8, 2026, arrest. Additionally, Petitioner is directed to also address

> precisely what relief, if any, is sought under his due process claims in light of the fact that Respondents allege that Petitioner's original parole was set to expire on February 25, 2026, along with the basis for such relief.

(ECF. No 17).

Both Petitioner and Respondents have filed their Statements of Position (ECF No. 19 and ECF No. 20, respectively). The Court will now consider Petitioner's Motion to Enforce. Petitioner's main contention is that he was detained in violation of the Fifth Amendment's Due Process Clause. (ECF No. 19, at 4).

## I. Factual and Procedural Background

The Department of Homeland Security ("DHS") paroled Petitioner into the United States on February 27, 2024. (ECF No. 19, at 1). Both Petitioner and Respondent agree that Petitioner was paroled pursuant to 8 U.S.C. § 1182(d)(5)(A). (ECF No. 19, at 2; ECF No. 20, at 1). The expiration date for Petitioner's parole was February 25, 2026. (ECF No. 16, at 17). On July 22, 2024, an Immigration Judge ordered Petitioner removed from the United States in absentia. (ECF No. 12, at 6). Just three days later, Petitioner's Motion to Reopen was granted. (ECF No. 1, at 20).

On January 8, 2026, Petitioner was arrested at a West York (PA) Police Department office while requesting information about an impounded vehicle. (ECF No. 12, at 6). Following Petitioner's arrest, an Immigration Judge ordered his removal on March 2, 2026 and Petitioner filed his appeal to this order on March 25, 2026 (ECF No. 1, at 20-21).

Respondents claim that "Petitioner's parole was terminated in early April of 2025 by email" as a result of an Executive Order. (ECF No. 20, at 2). Respondents also note that Petitioner is a class member in *Sileiri Doe et al v. U.S. Department of Homeland Security*, 1:25-cv-12245 (D. Mass). On March 31, 2026, after the date that the Petitioner had been arrested, the District Court in *Sileiri Doe*, "found that these parole terminations were invalid and ordered the

government to reinstate terminated paroles." (ECF No. 20, at 2). Petitioner's parole termination date was reinstated to February 25, 2026. Therefore, from January 8, 2026 to February 25, 2026, Petitioner was detained while his parole was still active, unless his parole was otherwise properly terminated in the interim.

**II. Jurisdiction**

The Court has jurisdiction to review a habeas petition and grant habeas relief to any person in custody "under or by color of the authority of the United States" or "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §§ 2441(a), (c)(1), (c)(3). "A district court's authority includes jurisdiction to hear habeas challenges to immigration-related detention." *Maldonado v. Cabezas*, No. 25-13004, 2025 WL 2985256, at *2 (D.N.J. Oct. 23, 2025)(citing *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001)).

Respondents point out that under 8 U.S.C. § 1252(g), courts lack jurisdiction "to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." (ECF No. 20, at 2). The United States Supreme Court held in *Reno v. American-Arab Anti-Discrimination Committee*, 525 U.S. 471 (1999) that it is "implausible" to believe that Congress' mention of these three discrete events "was a shorthand way of referring to all claims arising from deportation proceedings." *Id*. at 482.

Respondents point to the Third Circuit's opinion in *Tazu v. Att'y Gen.*, 975 F. 3d 292 (3d Cir. 2020) and this Court's interpretation of *Tazu* in *Roe v. Oddo*, No. 3:25-cv-128, 2025 WL 3030692, at *1 (W.D. Pa. Oct. 30, 2025) for the proposition that § 1252(g) strips the Court of jurisdiction to hear Petitioner's claims. In *Tazu*, the petitioner was challenging his re-detention by DHS because it ended "his supervision period without first giving him notice and a revocation

interview." 975 F.3d at 298. After execution of the petitioner's order of removal failed because of issues with the petitioner's passport, the Government released the petitioner on supervised release. *Id*. at 294. When the Government received the petitioner's renewed passport, it re-detained him three days later to execute his removal order. *Id*. at 295. The court in *Tazu* found that the petitioner was challenging one of the actions of which § 1252(g) bars district court's review: Execution of a removal order. *Id*. at 296-97.

*Roe* provided a similar set of facts to *Tazu*. The petitioner there was released by ICE on an Order of Supervision ("OSUP"). *Roe*, 2025 WL 3030692, at *2. When the petitioner failed to comply with ICE removal efforts, he was issued a failure to comply and was re-detained. *Id*. The petitioner then filed a Petition for a Writ of Habeas Corpus asserting, among other things, that ICE violated the Fifth Amendment when it "revoked his OSUP and detained him[.]" *Id*. at *3. The Court found that the petitioner's claim "directly mirror[ed]" the petitioner's claims in *Tazu* in that the petitioner was asking the Court to review the Governments execution of a removal order in violation of § 1252(g). *Id*. at *14.

But the present case is distinguishable from *Tazu* and *Roe* in that the Petitioner here was not subject to an order of removal until March 2, 2026. (ECF No. 1, at 20). Thus, Petitioner's arrest on January 8, 2026 cannot be an "execut[ion] [of a] removal order" if one did not yet exist. *See* § 1252(g). So yes, in both *Tazu* and *Roe*, the Court found that it could not review the Government's revocation of conditional release because it was done as a means of executing a removal order. 975 F.3d at 298 ("Re-detaining Tazu was simply the enforcement mechanism the Attorney General picked to execute his removal."); 2025 WL 3030692 ("Petitioner's OSUP was revoked for the purpose of removing him to the country designated in his final order of removal."). But here,

Petitioner's re-detention was not an execution of a removal order because one did not exist when he was detained. (ECF No. 13, at pg. 58).

When a petitioner argues that DHS is exceeding its authority "in terms of how they conduct" removal proceedings, § 1252(g) does not strip a district court of jurisdiction. *Del Cid v. Bondi*, No. 3:25-cv-300304, 2025 WL 2985150, at *15 (W.D. Pa. Oct. 23, 2025). Petitioner here is not questioning the discretion of DHS. Petitioner does not claim that his unexpired grant of parole categorically immunized him from any arrest otherwise authorized by Congress under 8 U.S.C. § 1226(a), nor does he claim that his parole should have been conditioned as a matter of discretion. (ECF No. 19, at 4). Rather Petitioner claims that when he was arrested on January 8, 2026, DHS effectively terminated his parole without complying with the process Petitioner is guaranteed through the Fifth Amendment. (ECF No. 19 at 4). The Court agrees. *See A-J-R v. Rokosky*, No. 25-17279, 2026 WL 25056, at *4-*5 (D.N.J. Jan. 5, 2026) (considering petitioner's due process claim stemming from automatic termination of petitioner's parole leading to their re-detention); *Noori v. LaRose*, 807 F. Supp. 3d 1146, 1160 (S.D. Cal. 2025) (finding § 1252(g) did not preclude court from hearing petitioner's due process claims arising from improper revocation of parole); *Mata Velasquez v. Kurzdorfer*, 794 F. Supp. 3d 129, 140 (W.D.N.Y. 2025) (finding "district courts can—and do—entertain challenges to the procedural process that the executive branch follows during the removal process.").

Because the Court finds that Petitioner is not challenging "the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders" but rather the lawfulness of process he was provided, the Court does have jurisdiction over Petitioner's claims. *See* § 1252(g).

**III. Petitioner's Procedural Due Process claim**

To assess a petitioner's due process claim, the Court considers: "(1)'the private interest that will be affected by the official action,' (2) 'the risk of an erroneous deprivation of such interest through the procedures used, and the probable value if any, of additional or substitute procedural safeguards,' and (3) 'the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.'" *Buele Morocho v. Warden Philadelphia FDC*, 2026 WL 2546223, at *9 (3d Cir. Aug. 28, 2026) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)).

We must first determine whether the Petitioner has an interest protected by the Fifth Amendment. *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) "The Fifth Amendment's Due Process Clause forbids the Government to 'depriv[e]' any 'person … of … liberty … without due process of law.'" *Zadvyas v. Davis*, 533 U.S. 678, 690 (2001). "[A]t the heart" of the Due Process Clause is the liberty to be free from imprisonment. *Id*. And "[i]t is well established that 'the Due Process Clause applies to all "persons" within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Pokhrel v. Oddo*, -- F. Supp. 3d--, 2026 WL 1758206, at *13 (W.D. Pa. June 15, 2026) (quoting *Zadvyas*, 533 U.S. at 690).

"[T]he liberty of a parolee, although indeterminate, includes many of the core values of unqualified liberty and its termination inflicts a 'grievous loss' on the parolee and often on others." *Morrissey*, 408 U.S. at 482. Indeed, the Supreme Court in *Morrissey* found that those on parole do have a protected liberty interest. *See id*. While this interest hasn't been specifically extended to the immigration context by our Court of Appeals, other district courts have found that similarly situated petitioners had a liberty interest in the Government properly revoking their conditional parole prior to detaining them. *See Singh v. Noem*, 824 F. Supp. 3d 1197, 1213 (D.N.M 2026)

("Petitioner has a liberty interest in [r]espondents properly revoking his conditional parole prior to detaining him again."); *Noori v. LaRose*, 807 F. Supp. 3d 1146, 1165 (S.D. Cal. 2025) (finding liberty interest in *Morrissey* "applies to [p]etitioner, even in his parole status."); *see generally In re Cuban*, 822 F. Supp. 192, 196 (M.D. Pa. 1993) ("An alien seeking admission into the United States is afforded only those rights which Congress agrees to extend.").

"Courts in the Third Circuit have found the government must follow the regulatory requirements of § 212.5(e) when terminating a noncitizen's parole and may not simply declare that parole was terminated to justify a detention after the fact." *Odinaev v. Sage*, No. 3:26-cv-01892, 2026 WL 2271446, at *4 (M.D. Pa. Aug. 6, 2026) (collecting cases); *see F.M.S. v. Lowe*, No. 1:25-cv-02061, 2026 WL 1113769, at *4-*5 (M.D. Pa. April 24, 2026). Under 8 C.F.R. § 212.5 (e)(1) parole terminates automatically "at the expiration of the time for which parole was authorized[.]" Section 212.5(e)(2)(i) continues that parole can be revoked "upon written notice to the alien and he …shall be restored to the status that he … had at the time of parole. When a charging document is served on the alien, the charging document will constitute written notice of termination of parole unless otherwise specified."

In *F.M.S.*, the court found that the respondents failed to comply with 8 C.F.R. § 212.5 (e)(2). *Id*. at *4. There, like here, the petitioner had entered the United States and was issued a removal order in absentia. *See id*. at *1. The petitioner in *F.M.S.* was granted parole under 8 U.S.C. § 1182(d)(5). *Id*. Because respondents could point to no record evidence suggesting "that [p]etitioner was properly served with a charging document or other written notice[,]" the court found that the petitioner had not received notice in accordance with 8 C.F.R. § 212.5 (e)(2). *Id*.

Respondents here too have failed to show Petitioner had received notice that his parole was terminated when Petitioner was arrested on January 8, 2026. Both parties agree that at the time of

Petitioner's arrest, the time for which parole was authorized had not yet expired. In Petitioner's form I-213, the "Record of Deportable/Excludable Alien" states that Petitioner was informed "that he was under arrest for violating immigration law[.]" (ECF No. 12, at 6). The form I-213 is insufficient to provide notice of termination of parole. *See A-J-R v. Rokosky*, No. 25-17279, 2026 WL 25056, at *5 (D.N.J. Jan. 5, 2026) (finding respondents failed to give notice of parole expiration where "[t]he only document [r]espondents have produced …is a Form I-213[.]"). Therefore, on January 8, 2026, when Petitioner was arrested, he had not received any notice that his parole, set to expire February 25, 2026, was revoked.[1] Respondents have not pointed to anything else Petitioner may have received that would have provided him notice that his parole was terminated and thus have not complied with 8 C.F.R. § 212.5. See *F.M.S.*, 2026 WL 1113769, at *4-*5 (M.D. Pa. April 24, 2026).

Petitioner's interest here then is two-fold: First, his basic interest in being free from detention. *See Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004) ("[T]he interest in being free from physical detention by one's own government[,]" "is the most elemental of liberty interests[.]"). Second, his interest in having the Government follow the proper procedures before revoking his parole and detaining him. *See Odinaev*, 2026 WL 2271446, at *4; *Singh*, 824 F. Supp. 3d at 1213. Because of the weight of these interests, the first *Mathews* factor weighs in favor of Petitioner.

The facts of this case highlight the high risk of erroneous deprivation of Petitioner's liberty interest. While Petitioner's parole was still active and before an order of removal was entered, Petitioner was arrested while inquiring about the status of an impounded vehicle. No more

[1] While Respondents appear not to dispute that Petitioner's parole was set to expire February 25, 2026, it should be noted that the April, 2025 email terminating Petitioner's parole would fail to give proper notice even had it not been overturned by the District Court in *Sileiri Doe*. *See Y-Z-L-H v. Bostock*, 792 F. Supp. 3d 1123, 1146 (D. Or. 2025) (finding mass email terminating parole was insufficient to give notice required to terminate parole under 8 C.F.R § 212.5(e)(2)(i)).

explanation was provided to Petitioner at the time of his arrest besides "that he was under arrest for violating immigration law[.]" (ECF No. 12, at 6). Such a broad and generalized statement neither supports an arrest in these circumstances, nor does it alter his parole status.

The Court "must weigh heavily in the balance that control over matters of immigration is a sovereign prerogative, largely within the control of the executive and the legislature." *Landon v. Plasencia*, 459 U.S. 21, 34 (1982). However, the Government's interest in detaining Petitioner prior to revoking his parole in accordance with the standards laid out by Congress does not weigh as heavily as lawful immigration enforcement. *See Singh*, 824 F. Supp. 3d at 1214. The Court cannot ignore the fact that Petitioner was detained prior to the expiration of his parole without any form of notice to him that his parole would be revoked. And it is not a cure that the Petitioner's parole expired over a month into that detention. *See generally Odinaev*, 2026 WL 2271446, at *3 (holding that the Government "may not simply declare that parole was terminated to justify a detention after the fact."); *Nosirov v. Rife*, No. 2:26-cv-1534, 2026 WL 916602, at *3 (E.D. Pa. Apr. 1, 2026) ("parole is a legal status with legal consequences, and the Government may not erase or ignore that status when it becomes inconvenient to its detention theory.").

Having determined that Respondents have violated Petitioner's interest in having his parole properly terminated, the question becomes "what process is due[.]" *See Mathews*, 424 U.S. at 333."[T]he habeas court must have the power to order the conditional release of an individual unlawfully detained—though release need not be the exclusive remedy and is not the appropriate one in every case in which the writ is granted." *Boumediene v. Bush*, 553 U.S. 723, 779 (2008). The Court notes that it has already found that Petitioner was being wrongfully detained in violation of 8 U.S.C. § 1226 and ordered a bond hearing to remedy that violation. (ECF No. 9, at 2); *see also Buele Morocho*, 2026 WL 2546223, at *8 (affirming release of petitioners challenging their

mandatory detention under § 1225(b)(2)(a) in violation of § 1226). But, the violation of Petitioner's Due Process rights in being detained prior to any notice that his parole had terminated has gone unremedied, and Petitioner's detention is therefore unlawful. Because Petitioner's detention is unlawful, the Court will order Petitioner's release.

AND NOW, this 15th day of September 2026, IT IS HEREBY ORDERED:

· The Petition for Writ of Habeas Corpus, (ECF No. 1) is GRANTED;

· Respondents shall remain in this judicial district until the release Petitioner from detention into a place within this judicial district takes place within seven (7) days of the date of this order;

· Petitioner shall be subject to the terms of supervision in 8 U.S.C. § 1231(a)(3) and any attendant regulations;

· Respondents shall release Petitioner with any and all personal property, including the items he had with him at Moshannon Valley Processing Center or at any other detention locations at which he was held;

· Respondents shall file a declaration or affidavit pursuant to 28 U.S.C. § 1746 within seventy-two (72) hours of Petitioner's release, confirming the date, time, and manner of release.

· Respondents are enjoined from re-detaining the Petitioner for a period of at least twenty-one (21) days, and may only do so in compliance with applicable law and the Constitution.

The Clerk will close the case on the docket without prejudice, and the Court retains jurisdiction over the action and the parties pending further proceedings, as may be appropriate, including interpretation or enforcement of its Orders.

/s/ Mark R. Hornak
Mark R. Hornak
UNITED STATES DISTRICT JUDGE